IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | : |  |
|---|---|---|
|  | : |  |
| v. | : | 3:17-CR-00201 |
|  | : | (JUDGE MARIANI) |
| JERY DELACRUZ, | : |  |
|  | : |  |
| Defendant. | : |  |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

Presently before the Court are Defendant Jery Delacruz's Motion to Compel

Discovery Materials (Doc. 57) and Motion for Early Disclosure of Jencks Material Pursuant

to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2 (Doc. 58).

On July 11, 2017, a federal grand jury returned an indictment charging Defendant

Delacruz and his brother Hector Delacruz as follows: (1) under 21 U.S.C. § 846 with

conspiracy to unlawfully distribute and possession with intent to distribute 100 grams and

more of heroin, a Schedule I controlled substance; 28 grams and more of cocaine base

(crack), a Schedule II controlled substance; and unspecified amounts of cocaine, marijuana,

and fentanyl, Scheduled controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(B) (Count I); and (2) under 21 U.S.C. § 841 with the substantive violation for the

afore-listed controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and

18 U.S.C. § 2 (Count II). (Doc. 1).

On October 18, 2017, Delacruz appeared before Magistrate Judge Joseph Saporito wherein he entered a plea of not guilty to the indictment and was ordered detained. (Docs. 30, 31). Defendant thereafter filed a Motion to Compel Discovery Materials (Doc. 57) and Motion for Early Disclosure of Jencks Material Pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2 (Doc. 58). Although neither of Defendant's motions were accompanied by supporting briefs, the United States filed briefs in opposition to Defendant's motions (Docs. 65, 66). On November 15, 2018, the Court having issued an order directing Defendant to show cause why the motions should not be deemed withdrawn for failure to file a brief in support of each motion (Doc. 89), Defendant filed his supporting briefs (Docs. 91, 93) and an "Answer to Rule to Show Cause" (Doc. 94). Upon review of Defendant's Answer, and receipt of Defendant's supporting briefs, the Court finds that Defendant's motions will not be deemed withdrawn and must be decided on their merits.

The Court will address the motions in turn.

## II. ANALYSIS

### A. Motion to Compel Discovery Materials

In Defendant's first motion (Doc. 57), he requests that the Court require the Government to disclose the following information:

1. Notice of the Government's intention to use hearsay statements pursuant to Rule 807 of the Federal Rules of Evidence;

2. Expert Information Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure as well Federal Rules of Evidence 702, 703 and 705;

2

3. Disclosure of the Government's intention to use evidence pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence;

4. Disclosure of the Government's witnesses and any statements made by witnesses including the identity of confidential informants and any inducements offered to those individuals in an effort to procure their testimony;

5. The disclosure of all evidence sought to be admitted at trial by the Government pursuant to the "co-conspirator exception" to the hearsay rule 801(d)(2)(e);

6. Any and all evidence requested in Exhibit A that has not been provided to the Defense by the Government at the time of the hearing of this motion.[1]

(Doc. 57, ¶ 8).

As the Court explained in its show cause order:

. . . although neither of Defendant's motions was ever briefed, the Government did file briefs in opposition to Defendant's motions (Docs. 65, 66). Defendant did not file a reply brief in response to either of the Government's briefs. The Court is thus left with briefing, albeit thorough, from only the Government on the issues raised, and the Government's interpretation of Defendant's pretrial requests. In addition, throughout the Government's briefs in opposition, it asserts that it has turned over all required information and that once it has further information requested by the Defendant, it will be provided to him as required under the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, *Jencks*, and any other applicable laws.

Defendant's motions fail to address in any detail the facts of this case, the alleged need for any of the requested evidence in this case, or explain why he believes that the Government has not fully complied with its duties under Rule 16, *Brady*, *Giglio*, and all other applicable law. Due to the sweeping nature of Defendant's motions and the lack of any accompanying briefs setting forth in more specificity what Defendant is seeking, the reasons for each request, and adequate citations to applicable rules and case law in support of his requests,

---

[1] Exhibit A is a letter from Defendant's counsel to the Government which identifies 11 categories of evidence, some of which include subparts, and broadly requests that the Government produce a wide array of documents and information.

and the Government's repeated assertions that it has turned over all documents and other evidence to which it believes Defendant is currently entitled, the Court is not in a position to currently evaluate what specific information Defendant is seeking and whether he is entitled at this time to that information.

(Doc. 89, at 2-3).

Despite this Court's direction that each of Defendant's briefs should include "the facts of this case, the alleged need for any of the requested evidence in this case, [and should] explain why he believes that the Government has not fully complied with its duties under Rule 16, *Brady*, *Giglio*, and all other applicable law" and that the briefs should include "in more specificity what Defendant is seeking, the reasons for each request, and adequate citations to applicable rules and case law in support of his requests", Defendant's brief in support of his request for the afore-listed evidence, only broadly argues, in less than one page, that (1) "[t]he Government should be required to disclose these materials because their disclosure is required" in accordance with Fed. R. Civ. P. 16, *Brady v. Maryland*, *Giglio v. United States*, and *Kyles v. Whitely*; and (2) "the failure to receive [the materials] would render counsel for the defendant unable to provide the reasonable investigation necessary to achieve the effective assistance that is required under" the Constitution. (Doc. 91, at 5). Defendant's generalized explanation and requests fail to adequately cite supporting case law or its applicability to the present case and fail to explain, as the Court requested, why he believes that the Government has not fully complied with its duties in light of the

Government's detailed response to Defendant's motion wherein they repeatedly asserted that they had turned over all required information.

Nonetheless, despite the Defendant's complete failure to provide *any* substantive argument with respect to *any* of his requests in his motion, or any supporting case law, the Court attempts herein to address each of Defendant's requests to the extent possible.

1. **Notice of the Government's intention to use hearsay statements pursuant to Rule 807 of the Federal Rules of Evidence.**

Defendant first seeks "[n]otice of the Government's intention to use hearsay statements pursuant to Rule 807 of the Federal Rules of Evidence." Pursuant to Fed. R. Evid. 807, the "residual exception" rule:

> **(a) In General.** Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> **(1)** the statement has equivalent circumstantial guarantees of trustworthiness;
> **(2)** it is offered as evidence of a material fact;
> **(3)** it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> **(4)** admitting it will best serve the purposes of these rules and the interests of justice.
> **(b) Notice.** The statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars, including the declarant's name and address, so that the party has a fair opportunity to meet it.

Fed. R. Evid. 807. The Third Circuit has repeatedly explained that "'[t]he residual hearsay exception is to be used only rarely, and in exceptional circumstances, and is meant to apply only when certain exceptional guarantees of trustworthiness exist and when high degrees of

probativeness and necessity are present.'" *United States v. Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003) (quoting *Bohler-Uddeholm Am., Inc. v. Ellwood Gp., Inc.*, 247 F.3d 79, 112 (3d Cir. 2001)).

In response to Defendant's request for disclosure of the Government's intention to use hearsay statements pursuant to Rule 807, the Government persuasively notes that "it would be impossible to recount the array of statements that will be admitted in the course of this trial, and seek pre-trial rulings on their admissibility", but represents, as the Court would expect of any party, that it "will not seek to admit inadmissible hearsay in its case-in-chief" (Doc. 65, at 7). The Government further represents that it "is unaware at this time of any information responsive to the defendant's requests which has not already been provided to the defendant or to which the defendant is not entitled at this time." (*Id*.). The Government explains that "[o]nce Government witnesses are identified, [it] will affirmatively seek from its witnesses any information relative to the defendant's requests" and "will advise defense counsel of any such information and will provide the required notice" in advance of trial. (*Id*.).

Defendant's brief in support of his motion, despite being filed after the Government's brief, does not contest any of the Government's representations or provide any basis for this Court to order the Government to disclose information which it asserts it has already provided or has acknowledged it will provide as necessitated under the applicable rules.

The Court will therefore deny Defendant's motion without prejudice.

6

## 2. Expert information pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure as well Federal Rules of Evidence 702, 703 and 705.

Defendant next requests that the Court compel the Government to provide "expert

information" in accordance with Fed. R. Crim. P. 16(a)(1)(G) and Fed. R. Evid. 702, 703,

and 705. (Doc. 57, at ¶ 8(B)). In response, the Government states:

> the defendant is hereby placed on notice that the Government, at the time of trial, will introduce expert testimony of the person who examined the suspected controlled substances in this case and who determined that the substances seized from the defendant's residence were Schedule I and II controlled substances. The expert will also testify as to the weight of the controlled substance. . . .

(Doc. 65, at 8).

> Pursuant to Rule 16,

> At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. If the government requests discovery under subdivision (b)(1)(C)(ii) and the defendant complies, the government must, at the defendant's request, give to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial on the issue of the defendant's mental condition. The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed. R. Crim. P. 16(a)(1)(G).

Here, although the Government has now informed Defendant that it will introduce

expert testimony, the description of this testimony, and any expert report, falls well short of a

description of "the witness's opinions, the bases and reasons for those opinions, and the

witness's qualifications." *See e.g., United States v. Vaghari*, 735 F.Supp.2d 197, 200-201

7

(E.D. Pa. 2010).[2] Thus, to the extent that it has not already done so, the Government shall provide the defendant with a written summary of any expert testimony that it intends to offer as well as the qualifications of any expert that it intends on using. Defendant's motion for expert information will therefore be granted as set forth, *supra*.

3. **Disclosure of the Government's intention to use evidence pursuant to Rules 404(b) and 609 of the Federal Rules of Evidence and the disclosure of all evidence sought to be admitted at trial by the Government pursuant to the "co co-conspirator exception" to the Hearsay Rule 801(d)(2)(e).**

Defendant also asserts that he is entitled to disclosure of: (1) the Government's intention to use evidence pursuant to Federal Rules of Evidence 404(b) and 609, and (2) all evidence the Government will seek to admit at trial pursuant to the "co-conspirator exception" in Federal Rule of Evidence 801(d)(2)(e). (Doc. 65, at ¶ 8(C), (E)).

---

[2] In *Vaghari*, the Government sent a letter to counsel for the defendants providing a brief summary of the expert's testimony and attaching that expert's resume to the letter. Specifically, the Government's letter was described by the Court as follows:

> the government advised that it intended to "qualify Dr. [Matthew] Levitt as an expert on efforts to evade U.S. trade sanctions governing trade with Iran." The government averred that Dr. Levitt would "testify that the United Arab Emirates is a location through which technology is often trans-shipped from the West to Iran." According to the letter, Dr. Levitt would "offer both expert and percipient witness testimony about this smuggling activity, as well as assorted observations about the nature of, and facts related to, Iran's government, infrastructure, universities, and industry." Dr. Levitt's resume was attached to the letter.

735 F.Supp.2d at 200. Two months later, one of the defendants filed a motion to preclude the Government from offering this expert testimony on several bases, including that the Government's disclosure failed to satisfy the requirements of Rule 16(a)(1)(G). In response, the Government provided defendants' counsel "a revised and expanded expert disclosure". The District Court found that the Government's first letter failed to meet the requirements of Rule 16(a)(1)(G), but that the Government's revised disclosure was sufficient.

In the present action, the Government's expert disclosure is significantly vaguer than that originally given by the Government in *Vaghari*, which the Court found was insufficient to satisfy Rule 16(a)(1)(G).

*See also, United States v. Lopez*, 271 F.3d 472, 484 (3d Cir. 2001) (assuming, without deciding, that "by not providing the expert witness's resume to the defense until trial, and only providing the defense with a brief summary of the expert report, the government violated the requirements of Rule 16(a).").

Pursuant to Rule 404, "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, this evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2). "On request by a defendant in a criminal case, the prosecutor must . . . provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and . . . do so before trial – or during trial if the court, for good cause, excuses lack of pretrial notice." *Id.*

The Rules of Evidence do not set forth a specific time frame within which the Government must provide Rule 404(b) evidence. Rather, "[w]hat constitutes reasonable notice in advance of trial [pursuant to Rule 404(b)] is determined by the circumstances and complexity of the prosecution." *United States v. Johnson*, 218 F.Supp.3d 454, 462 (W.D.Pa. 2016)(internal quotation marks omitted). Courts have thus frequently found that the Government must disclose Rule 404(b) evidence no less than one to two weeks prior to trial. *See id.* (ten business days); *United States v. Giampa*, 904 F.Supp. 235, 283 (D.N.J. 1995) (two weeks); *United States v. Evangelista,* 813 F.Supp. 294, 302 (D.N.J. 1993) (ten business days); *United States v. Woods*, 2008 WL 2622902, at *5 (W.D.Pa. 2008) (five calendar days). See *also, United States v. Kern,* 12 F.3d 122, 124 (8th Cir.1993) (finding magistrate judge's order that "any 'bad act' evidence be disclosed at least fourteen days

9

prior to trial" pursuant to Rule 404(b) "was reasonable"); *United States v. French*, 974 F.2d 687, 694-95 (6th Cir. 1992) (district court's approval of Government's one-week notice to defendant's counsel of its intent to produce "other crimes" evidence was not an abuse of discretion under the circumstances).

Here, in response to the defendant's request for disclosure of evidence pursuant to Rule 404(b), the Government admits that it "recognizes that pre-trial disclosure of Rule 404(b) material is helpful to minimize speculation by the defense as to the Government's theory of the relevance of such information and to avoid delays in trial" and thus states that it "will endeavor to provide defense counsel with reasonable pretrial notice of Rule 404(b) evidence." (Doc. 65, at 9-10).

Although the Court appreciates the Government's representation that it will "endeavor" to provide Defendant with reasonable pretrial notice pursuant to Rule 404(b), this is insufficient to meet the Rule 404(b) requirements. Rather, the Government will be ordered to produce all Rule 404(b) evidence of which it is aware and that it intends to offer at trial no later than ten calendar days prior to trial.

The Court turns to Defendant's request that the Court compel the Government to disclose any evidence it intends to use pursuant to Federal Rule of Evidence 609. Rule 609, Impeachment by Evidence of a Criminal Conviction, sets forth rules which apply to "attacking a witness's character for truthfulness by evidence of a criminal conviction." Fed. R. Evid. 609(a). Although Rule 609(b) provides that if more than ten years have passed

10

since the witness's conviction or release from confinement, whichever is later, the party seeking to introduce the evidence of the conviction must "give[] an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use", Fed. R. Evid. 609(b)(2), the text of Rule 609(a) provides no such notice requirement. As a result, "the court can only order the government to provide advanced written notice of its intent to proffer any Rule 609(b) evidence," but not of Rule 609(a) evidence. *See United States v. Beech*, 307 F.R.D. 437, 443 (W.D. Pa. 2015).

In the present action, the Government states that it has provided Defendant with the record of his criminal history and convictions. (Doc. 65, at 10). However, the Government indicates that with respect to other witnesses, it "is not able to determine whether it will attempt to impeach a witness with a conviction more than 10 years old since the Government does not yet know who the defendant's witnesses will be." (*Id.*).

To the extent the Government becomes aware of any evidence which falls within the ambit of Rule 609(b), it will be required to provide notice of its intent to use such evidence at the same time it provides notice under Rule 404(b) – no later than ten calendar days prior to trial.

Defendant further requests that the Government disclose "all evidence sought to be admitted at trial by the government pursuant to the 'co-conspirator exception' to the hearsay rule 801(d)(2)(e)." (Doc. 57, at ¶ 8(E)). This quoted statement by Defendant comprises the entirety of his request with respect to Rule 801(d)(2)(E).

11

Rule 801(d)(2)(E) provides that a statement offered against an opposing party and which "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E). As the Government properly notes, Rule 801(d)(2)(E) "is simply a rule of evidence that speaks to the admissibility of co-conspirator statements at trial." (Doc. 65, at 11). Because Defendant has not provided any legal analysis or case law in support of any of his pre-trial requests in this motion, including his request pursuant to Rule 801(d)(2)(E), the Court is unable to determine the legal basis for Defendant's present request pursuant to that Rule. However, to the extent that Defendant is asserting that he is entitled to any statements made by co-conspirators pursuant to Federal Rule of Criminal Procedure 16, "[d]istrict courts of the Third Circuit have consistently held that Rule 16 does not provide for the discovery of a co-conspirator's statement", *United States v. Cheatham*, 500 F.Supp.2d 528, 538 (W.D. Pa. 2007) (collecting cases). *See also*, *United States v. D'Elia*, 2007 WL 2458487, at *6 (M.D. Pa. 2007) ("[The Third Circuit] has indicated a preference that the government prove the existence of the conspiracy and each defendant's connection with it by independent evidence *before admitting hearsay declarations of an alleged coconspirator* at trial. This does not mean, however, that the government must present the requisite evidence before it actually seeks to admit a coconspirator's hearsay statement into evidence at trial. This Court can take up the matter at the time of trial.") (emphasis in original) (internal citations and quotation marks omitted).

12

The Court will therefore deny Defendant's request that the Court compel the

Government to disclose co-conspirator statements which may be subject to Rule

801(d)(2)(E).

**4. Disclosure of the Government's witnesses and any statements made by witnesses including the identity of confidential informants and any inducements offered to those individuals in an effort to procure their testimony.**

Defendant further requests that the Government disclose its witnesses and any

statements made by witnesses, as well as the identity of confidential informants and "any

inducements offered to those individuals in an effort to procure their testimony." (Doc. 57, at

¶ 8(D)).

With respect to Defendant's request that the Government disclose the names of its

witnesses, such a request is unsupported by law. "[I]t is clear that a criminal defendant

does not have the right to full discovery of the government's case." *United States v.*

*Casseus,* 282 F.3d 253, 257 (3d Cir. 2002). As relevant here, it has long been established

that "in no event is the Government required to divulge the identity of its witnesses in a

noncapital case." *United States v. Addonizio,* 451 F.2d 49, 62 (3d Cir. 1971); *Government*

*of V.I. v. Martinez,* 847 F.2d 125, 128 (3d Cir. 1988) ("We begin our analysis by noting the

well established principle that the government is not automatically required to disclose the

name of a witness in a non-capital criminal case." (citing *United States v. DiPasquale,* 740

F.2d 1282, 1293 (3d Cir.1984))). *See also, Evangelista,* 813 F.Supp. at 302 (collecting

cases). Nonetheless, a Court has the discretion to order the Government to disclose the

identity of its witnesses "to ensure the effective administration of the criminal justice system". *Martinez*, 847 F.2d at 128 (citing *United States v. Higgs*, 713 F.2d 39, 44 n. 6 (3d Cir. 1983)).

Here, Defendant has provided no explanation or justification for his broad request that the Government "disclose its witnesses" at this stage in the proceedings. In light of Defendant's generalized and unsupported request, and the Government's clear lack of any obligation to provide a witness list in a non-capital case (with the exception of any specific witness information which may be subject to disclosure pursuant to the Jencks Act and Fed. R. Crim. P. 16), the Court will deny Defendant's request.

Defendant has further requested the "identity of confidential informants and any inducements offered to those individuals in an effort to procure their testimony." (Doc. 57, at ¶ 8(D)). In response to this request, the Government cites to a number of cases, including *Roviaro v. United States*, 353 U.S. 53, 59 (1957) and *McCray v. State of Illinois*, 386 U.S. 300, 309 (1967), for the proposition that it is well-established that the Government is permitted, absent exigent circumstances, to withhold the identity of informants. (Doc. 65, at 13-16).

In *Roviaro*, the Supreme Court found that "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353

U.S. at 60-61. Nonetheless, "no fixed rule with respect to disclosure [of the identity of an

informant] is justifiable." Instead,

> [t]he problem is one that calls for balancing the public interest in protecting the
> flow of information against the individual's right to prepare his defense. Whether
> a proper balance renders nondisclosure erroneous must depend on the
> particular circumstances of each case, taking into consideration the crime
> charged, the possible defenses, the possible significance of the informer's
> testimony, and other relevant factors.

*Id.* at 62.

A decade later, in *McCray*, the Supreme Court again addressed the privilege against

disclosure of the identity of persons supplying the Government with information concerning

the commission of crimes and set forth the reason for this privilege:

> Communications of this kind ought to receive encouragement. They are
> discouraged if the informer's identity is disclosed. Whether an informer is
> motivated by good citizenship, promise of leniency or prospect of pecuniary
> reward, he will usually condition his cooperation on an assurance of anonymity
> – to protect himself and his family from harm, to preclude adverse social
> reactions and to avoid the risk of defamation or malicious prosecution actions
> against him. The government also has an interest in nondisclosure of the
> identity of informers. Law enforcement officers often depend upon professional
> informers to furnish them with a flow of information about criminal activities.
> Revelation of the dual role played by such persons ends their usefulness to the
> government and discourages others from entering into a like relationship.
>
> That the government has this privilege is well established and its soundness
> cannot be questioned.

*McCray*, 386 U.S. at 308 (quoting 8 Wigmore, Evidence § 2374 (McNaughton rev. 1961)).

Prior to engaging in the *Rovario* balancing test, the defendant has the burden of

setting forth and establishing a specific need for disclosure of the identity of the confidential

informant. *See United States v. Jiles*, 658 F.2d 194, 197-198 (3d Cir. 1981) (stating that

"the first step in determining whether the identity of an informant must be disclosed is to

ascertain what need, if any, the defendant has alleged for disclosure", and that this burden

to show the need for disclosure is on the defendant, and the "second part of the '*Roviaro*

test' requires a balancing of the [Defendant's] interest in disclosure against the

Government's interest in maintaining the confidentiality of its informant."). In meeting its

burden, the defendant may not merely rely on speculation or vague assertions. *See U.S. v.

Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) ("[Defendant's] argument, as to why the identity

of the informant here would be useful, is vague. '[M]ere speculation as to the usefulness of

the informant's testimony to the defendant is insufficient to justify disclosure of his identity.'

So far as appears, the informant's role in this case was nothing more than that of allegedly

providing the police with probable cause for conducting their search. . . . The evidence of

[Defendant's] guilt consisted primarily of the physical evidence seized during the search.

Where an informant's role was in validating a search, disclosure of his identity is not

required. [Defendant] has failed to present a convincing argument that the informant played

any more important role in the Government's case or in his defense." (internal citations

omitted)); *Jiles*, 658 F.2d at 197 ("The mere speculation that an eyewitness may have some

evidence helpful to defendant's case is not sufficient to show the specific need required by

*Roviaro*."); *United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972) (finding

unpersuasive Defendant's "speculation that testimony or information from the informant

might have been used to impeach or cross-examine [a witness] and 'might even have led to the [defendant's] being able to raise the issue of entrapment'".).

In this case, Defendant has set forth *no* reasons for seeking the disclosure of the identities of the confidential informants. Defendant's entire statement on this issue is a request that "the Court compel the Government to furnish the following . . . D. Disclosure of the Governments [*sic*] witnesses and any statements made by witnesses including the identity of confidential informants and any inducements offered to those individuals in an effort to procure their testimony." (Doc. 57, at ¶ 8(D); *see also*, Doc. 91, at 4). Thus, Defendant has entirely failed to meet his burden of establishing a specific need for disclosure of the identity of the confidential informant(s).

Even if the Court were to apply the *Roviaro* balancing test, a case-specific analysis demonstrates that Defendant is not entitled to the disclosure of the requested identities. The Government asserts that it "has concerns in this case regarding the safety of confidential sources of information who have cooperated with law enforcement in this investigation." (Doc. 65, at 16). In addition, there is no indication that not knowing the identity of the confidential informants interferes with Defendant's right to prepare his defense. Further, the disclosure of the individuals' identities may discourage these individuals, as well as other present and future informants and sources, from coming forward or aiding the government in exposing criminal activities. Thus, "taking into consideration the crime charged, the possible defenses, the possible significance of the

17

informer's testimony, and other relevant factors", *Roviaro*, 353 U.S. at 62, this Court finds that the balancing test weighs in favor of preserving the identities of the confidential sources and confidential informant.

For the aforementioned reasons, Defendant's request that the Court compel the Government to disclose the identities of its witnesses, including its confidential informants, will be denied.[3]

## 5. Any and all evidence requested in Exhibit A that has not been provided to the Defense by the government at the time of the hearing of this motion

Defendant's final portion of his motion requests "any and all evidence requested in Exhibit A that has not been provided to the Defense by the government at the time of the hearing of this motion." (Doc. 57, at ¶ 8(F)). Preliminarily, Defendant has not requested a hearing, nor do any of Defendant's requests set forth in his "Motion to Compel Discovery Materials" (Doc. 57) necessitate a hearing in order for this Court to resolve the motion. Furthermore, Exhibit A, a letter from Defendant's counsel to the Government, contains 11 categories of evidence, some of which include subparts, which broadly request that the Government produce a wide array of documents and information. This letter appears to be a form letter sent by Defendant's counsel in criminal cases.[4]

---

[3] The Court interprets Defendant's request that the Court order the Government to disclose "any inducements offered to those individuals in an effort to procure their testimony" as a request pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), and will thus address the issue, *infra*.

[4] For example, the first page of the letter states that "Defendant, Phillips, hereby requests" the information set forth in the letter. (Doc. 57-1, at 1). The Defendant in the present action is Jery Delacruz.

The Government has repeatedly asserted throughout its brief in opposition to Defendant's motion that it "has produced and/or made available all discovery currently in its possession in advance of this discovery request." (*See e.g.* Doc. 65, at 1, 16). Despite this Court's Order stating that "Defendant's motions fail to . . . explain why he believes that the Government has not fully complied with its duties under Rule 16, *Brady, Giglio,* and all other applicable law" and therefore specifically directing Defendant to "explain [in his brief in support of his motion] why the Government is incorrect in its representations that it has fully complied with its legal obligations" (Doc. 89), Defendant's brief in support of his present motion does not address the Government's assertions or identify any documents or other evidence to which he asserts he is entitled at this time and has not received. Thus, the Court is unable to determine what evidence, if any, requested in Exhibit A, "has not been provided to the Defense by the government" and therefore what information Defendant is currently seeking. To the extent that the Court has not addressed Defendant's requests in other portions of this memorandum opinion, Defendant's request that the Government produce "any and all evidence requested in Exhibit A that has not been provided to the Defense" is therefore denied without prejudice.

### 6. *Brady/Giglio* Material

Finally, to the extent not addressed in other portions of this memorandum opinion, the Court deems it necessary to address the necessity of the disclosure of any material

subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).[5]

Under *Brady*, the Government has a continuing obligation to turn over evidence favorable to the Defendant, "where the evidence is material either to guilt or punishment." 373 U.S. at 87. In *Giglio*, the Supreme Court further required that the Government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency made in return for testimony. *See* 405 U.S. at 154-55. "The holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the accused and 'material either to guilt or to punishment.'" *U.S. v. Bagley*, 473 U.S. 667, 674 (1985). As such, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case" and disclose that information to the defendant. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (citing *Brady*, 373 U.S. at 87).

Defendant has requested that the Court compel the Government to disclose "any inducements offered to [Government witnesses] in an effort to procure their testimony." This request will be denied. The Supreme Court in *Giglio* explained that *Brady* requirements include an obligation that the Government disclose any impeachment information that it possesses regarding its own witnesses, such as promises for leniency

---

[5] The Court will address the disclosure of any information under the Jencks Act, 18 U.S.C. § 3500 when addressing Defendant's second pre-trial motion, "Motion for Early Disclosure of Jencks Material Pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procure 26.2" (Doc. 58).

made in return for testimony. *Giglio*, 405 U.S. at 154-155. The Third Circuit has explained

that due process requires only that *Brady* material be disclosed to the defense "in time for

its effective use at trial." *U.S. v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983). In *Higgs*, the Circuit

found that the *Brady* material at issue:

> was information that [Defendants] could use on cross-examination to challenge
> the credibility of government witnesses. For that type of material, we think
> [Defendants'] right to a fair trial will be fully protected if disclosure is made the
> day that the witness testifies. Disclosure at that time will fully allow appellees
> to effectively use that information to challenge the veracity of the government's
> witnesses.

*Id.*

Here, the Government states that "it has provided, and will continue to provide at the

appropriate times, discovery of all information covered by this District's standing discovery

order, as well as all material required to be disclosed under" *Brady* and *Giglio*, and

acknowledges that *Giglio* material "typically includes immunity agreements, plea

agreements, money paid to a witness, and prior criminal convictions". (Doc. 65, at 16).

Consistent with its obligations under *Brady* and *Giglio*, the Government further asserts that

"once Government witnesses are identified, the Government will affirmatively seek from its

witnesses any information relative to the defendant's requests" and that "[i]f any requested

information is discovered and becomes available, the Government will provide the same to

defense counsel." (Doc. 65, at 17-18). The Defendant has not disputed any of the

Government's representations or otherwise asserted that the Government is not complying

with its duties under *Brady*, *Giglio*, and their progeny.

Furthermore, Defendant cites no authority for the proposition that he is entitled to any "inducements" between the Government and any witnesses and/or informants at this time. Nor does Defendant specifically explain why this information is needed prior to the time that the Government has stated it will produce it or assert that the Government has not turned over any information that it has already discovered with respect to the aforementioned requests. Thus, in accordance with *Giglio* and Third Circuit precedent, and in light of the information currently before this Court and the Government's representations, it appears that the disclosure of any agreements at the time set forth by the Government will not prevent the defendant from "its effective use at trial." *See U.S. v. Villarman-Oviedo*, 325 F.3d 1, 13 (1st Cir. 2003) (finding that the Government did not violate *Brady*, *Giglio*, or the Jencks Act when it turned over a witness's plea and cooperation agreement four days before trial).

Nonetheless, to the extent that the Government has not already done so, the Court will order the Government to turn over all information that meets the *Brady* and *Giglio* standards for disclosure at the appropriate time, and to fully comply with its duty to learn of any as-yet-unknown evidence properly disclosable under *Brady* and *Giglio*.

## B. Motion for Early Disclosure of Jencks Material

Defendant's second motion, entitled "Motion for Early Disclosure of Jencks Material Pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2" (Doc. 58), requests that the Court order the Government to disclose six categories of material as well

as any Jencks material "as early as possible", but "at least thirty days before trial to avoid unnecessary delays and ensure the full and fair cross examination of witnesses brought against the Defendant." (Doc. 58, at ¶ 6; *see also,* Doc. 92, at 4, 9, 11). Unlike Defendant's first motion, Defendant has provided this Court with a brief in support of his motion which sets forth certain applicable law and legal arguments in support of his position.

Defendant asserts that "he is entitled to [certain] material under Jencks and Rule 26.2, as well as to the following:"

A. A statement written by a witness; and signed, adopted or approved by the witness; or substantially verbatim transcript made contemporaneously with witness' oral statement; or witness' grand jury testimony;

B. Rough notes of FBI agents, IRS Agents, ICE Agents, agents of the Office of the Attorney General, Luzerne County District Attorney's Office and/or Detective's Office, agents of the Pennsylvania Judicial Conduct Board, municipal police officers, or state police who were working with federal authorities. *United States v. Ramos,* 26 F.3d 65 (3d Cir. 1994); *U.S. v. Dekle,* 768 F.2d 1256 (11th Cir. 1985);

C. "Case Summary Memos" from agents involved in the investigation;

D. Any notes used by witnesses when testifying before the grand jury. *U.S. v. Wallace,* 848 F.2d 1464 (9th Cir. 1988);

E. The prosecutor's notes of witness interviews regardless of whether the notes had been read back to the witness for corrections and/or otherwise adopted by the witness. *Goldberg v. U.S.,* 425 U.S. 101 (1976), Deputy Attorney General David W. Ogden's memorandum of January 4, 2010 to federal prosecutors entitled Guidance for Prosecutors Regarding Criminal Discovery;

F. Diaries or notebooks kept by witnesses. *U.S. v. Rivera Pedin,* 861 F.2d 1522 (11th Cir. 1988).

(Doc. 92, at 2-4).

Defendant acknowledges that that Government has indicated that it will provide him

with Jencks material within 3 days of trial. However, Defendant asserts that

the Government's contemplated disclosure schedule provides the Defendant
with no meaningful relief because it will not provide sufficient opportunity for
counsel to investigate the disclosed information or to adequately prepare for
cross-examination of Government witnesses at trial. This fails to satisfy
defense counsel's need to investigate to prepare for trial which is required to
allow the Defendant effective assistance of counsel.

(Id. at 4). Defendant appears to recognize that neither the Jencks Act nor Federal Rule of

Criminal Procedure 26.2 require the Government to disclose the requested material more

than three days prior to trial, but argues that early disclosure of this material is permissible

pursuant to Court order and that such disclosure is necessary here "so as to furnish the

Defendant with sufficient time to examine and utilize this material in a meaningful manner

before and during trial." (Id. at 5-6). Defendant further argues that in this matter "the

number of Government witnesses and the amount of documentary evidence militate in favor

of early production of Jencks materials." (Id. at 11).

The Federal Rules provide that

[a]fter a witness other than the defendant has testified on direct examination,
the court, on motion of a party who did not call the witness, must order an
attorney for the government or the defendant and the defendant's attorney to
produce, for the examination and use of the moving party, any statement of the
witness that is in their possession and that relates to the subject matter of the
witness's testimony.

24

Fed. R. Crim. P. 26.2(a). The Jencks Act further provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). The Jencks Act also requires that

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified.

*Id.* at § 3500(b). A "statement" is defined in the Jencks Act as follows:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

*Id.* at § 3500(e).

Thus, with respect to prior statements of witnesses that the Government intends to call at the time of trial, both the Jencks Act and the Federal Rules of Criminal Procedure make clear that the Government does not need to turn over the information requested by Defendant in this case until the witness whose statement is at issue has testified on direct

examination at trial.[6] As the Third Circuit made clear, "[t]he blunt command of the [Jencks Act] together with the unequivocal legislative history has led to unbroken precedent in the Courts of Appeals denying to district courts the power to compel production of the statements of government witnesses until conclusion of direct examination at the trial." *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978). *See also*, *United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D. Pa. 2010) (denying Defendant's motion for early production of material under the Jencks Act and finding that, where the Government had agreed to provide the Jencks material three days prior to trial, "[i]t is not within the power of the District Courts to accelerate" the Government's timetable); *United States v. Eisenberg*, 773 F.Supp. 662, 683 (D.N.J. 1991) (denying Defendant's motion for disclosure of the pretrial statements of a Government witness prior to that witness's testimony, citing to the Jencks Act and Rule 26.2, and finding that although the Government stated that it would disclose any Jencks Act material the day before that witness testified, "it is not required to do so."); *United States v. D'Elia*, 2007 WL 2358487, *7 (M.D. Pa. 2007) (denying Defendant's motion under the Jencks Act and Rule 26.2 to require the Government to disclose Jencks Act material at least thirty days prior to trial).

With respect to the grand jury material, it "is settled federal policy that the grand jury system requires secrecy of grand jury proceedings. Rule 6(e) of the Federal Rules of

---

[6] Federal Rule 26.2 also applies to statements given at a suppression hearing and at various other hearings. *See* Fed. R. Crim. P. 26.2(g). However, none of those hearings are at issue here.

Criminal Procedure is intended to preserve this norm of secrecy by preventing the disclosure of matters occurring before a grand jury." *In re Grand Jury Matter*, 682 F.2d 61, 63 (3d Cir. 1982) (internal citations omitted). Thus, a "party moving for court-ordered disclosure [of grand jury proceedings] bears a heavy burden of proving to the court that 'the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Eisenberg*, 773 F.Supp. at 707 (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979)). "The most significant factor which a party seeking disclosure must show is 'particularized need' for the information." *Giampa*, 904 F.Supp. at 287 (collecting cases). "The Supreme Court has repeatedly stressed the wide discretion given district courts in evaluating whether disclosure of grand jury materials would be appropriate. *See, e.g., United States v. John Doe, Inc. I,* 481 U.S. 102, 116, 107 S.Ct. 1656, 95 L.Ed.2d 94 (1987)." *United Kingdom v. United States*, 238 F.3d 1312, 1320 (11th Cir. 2001).

Here, Defendant has requested a generalized array of grand jury material, without demonstrating any particularized need for any of specific information. Rather, Defendant has only broadly asserted that he needs additional time to review this material and that ordering early disclosure of this information would aid in judicial efficiency should this action proceed to trial. As a result, the Court will deny Defendant's motion for grand jury materials.

Finally, although Defendant has requested that the Court order early disclosure of "[d]iaries or notebooks kept by witnesses", Defendant's single citation to an Eleventh Circuit case does not provide support for this request. In *United States v. Rivera Pedin*, 861 F.2d 1522 (11th Cir. 1988), the Circuit found that a witness's diary entries properly constituted Jencks Act materials. However, the Court held that the prosecutor "exceeded his role when he unilaterally decided which pages of the diary met the Jencks Act requirement of relating to the subject matter of the testimony of the witness" and that the district court erred in "abdicat[ing] his responsibility to the prosecutor" by refusing to examine *in camera* all of the witness's diary entries for the relevant time period. 861 F.2d at 1527 (internal quotation marks and brackets omitted). Thus, despite Defendant's reliance on *Pedin*, that case does not advance any argument that a defendant is entitled to the early disclosure of a witness's diaries or notebooks. Here, once again, the Court finds that the Government is not required to disclose Jencks Act material in the form of "diaries or notebooks kept by witnesses" until that witness has testified on direct examination in the trial of the case.

Nonetheless, the Government has represented that it plans to disclose the materials at issue earlier than the time specified in the Jencks Act: that is, with the possible exception of certain limited circumstances, "no later than the Friday before trial, assuming trial is scheduled for a Monday." (Doc. 66, at 7). But regardless of whether the materials are

ultimately provided before or during trial, the case law makes clear that Defendant's request to supply the material now are premature and cannot be granted.[7]

Accordingly, Defendant's request for "early disclosure of statements, pursuant to the Jencks Act, 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2" (Doc. 58) will be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Jery Delacruz's Motion to Compel Discovery Materials (Doc. 57) and Motion for Early Disclosure of Jencks Material Pursuant to 18 U.S.C. § 3500 and Federal Rule of Criminal Procedure 26.2 (Doc. 58) will be decided as set forth in this memorandum opinion. A separate Order follows.

Robert D. Mariani
United States District Judge

---

[7] The Government's representation that it will provide the materials several days prior to trial is a well-accepted practice in federal prosecutions. See e.g., United States v. Maury, 695 F.3d 227, 248, n.18 (3d Cir. 2012) (noting that while "the government has no obligation to produce Jencks material until the witness has testified", "despite this limitation, many federal prosecutors routinely turn over Jencks material a few days before the witness testifies.").